UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

GARY JOHN LUKASIK,

        Plaintiff,

   v.                                   **DECISION AND ORDER**
                                                 19-CV-760S

COMMISSIONER OF SOCIAL SECURITY,

        Defendant.
_____

        1.      Plaintiff Gary John Lukasik brings this action pursuant to the Social Security Act ("the Act"), seeking review of the final decision of the Commissioner of Social Security that denied his application for supplemental security income under Title II of the Act. (Docket No. 1.) The Court has jurisdiction over this action under 42 U.S.C. § 405(g).

        2.      Plaintiff protectively filed his application for benefits with the Social Security Administration on November 4, 2015. (R.[1] at 159.) Plaintiff alleged disability beginning on November 4, 2015, due to "having [his] toe amputated" and "penis surgery." (Id.) Plaintiff's application was denied. Plaintiff thereafter requested a hearing before an administrative law judge ("ALJ"). ALJ John Loughlin held a hearing on March 29, 2018, at which Plaintiff, represented by his attorney, appeared and testified by videoconference. (R. at 118-143.) Vocational Expert Nicholas Fidenza also appeared and testified. (R. at 118.) At the time of the hearing, Plaintiff was 51 years old, with a seventh-grade education and prior work experience as a roofer and mason. (R. at 159, 170, 129.)

        3.      The ALJ considered the case *de novo* and, on July 12, 2018, issued a written decision denying Plaintiff's application for benefits. (R. at 95-106.) On April 12,

---

[1] Citations to the underlying administrative record are designated as "R."

2019, the Appeals Council denied Plaintiff's request to review the ALJ's decision. (R. at 1.) Plaintiff then filed the current action on June 10, 2019, challenging the Commissioner's final decision.[2]

4.      Both parties moved for judgment on the pleadings under Rule 12(c) of the Federal Rules of Civil Procedure. (Docket Nos. 10, 12.)  Plaintiff filed a response on March 10, 2020, (Docket No. 13), at which time this Court took the motions under advisement without oral argument. For the reasons that follow, Plaintiff's motion is granted, and Defendant's motion is denied.

5.      A court reviewing a denial of disability benefits may not determine *de novo* whether an individual is disabled. See 42 U.S.C. §§ 405(g), 1383(c)(3); Wagner v. Sec'y of Health & Human Servs., 906 F.2d 856, 860 (2d Cir. 1990).  Rather, the Commissioner's determination will be reversed only if it is not supported by substantial evidence or there has been a legal error.  See Grey v. Heckler, 721 F.2d 41, 46 (2d Cir. 1983); Marcus v. Califano, 615 F.2d 23, 27 (2d Cir. 1979).  Substantial evidence is that which amounts to "more than a mere scintilla," and it has been defined as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  Richardson v. Perales, 402 U.S. 389, 401, 91 S. Ct. 1420, 1427, 28 L. Ed. 2d 842 (1971).  Where evidence is deemed susceptible to more than one rational interpretation, the Commissioner's conclusion must be upheld.  See Rutherford v. Schweiker, 685 F.2d 60, 62 (2d Cir. 1982).

6.      "To determine on appeal whether an ALJ's findings are supported by substantial evidence, a reviewing court considers the whole record, examining the

---

[2] The ALJ's July 12, 2018, decision became the Commissioner's final decision in this case when the Appeals Council denied Plaintiff's request for review.

2

evidence from both sides, because an analysis of the substantiality of the evidence must also include that which detracts from its weight." Williams ex rel. Williams v. Bowen, 859 F.2d 255, 258 (2d Cir. 1988). If supported by substantial evidence, the Commissioner's finding must be sustained "even where substantial evidence may support the plaintiff's position and despite that the court's independent analysis of the evidence may differ from the [Commissioner's]." Rosado v. Sullivan, 805 F. Supp. 147, 153 (S.D.N.Y. 1992). In other words, this Court must afford the Commissioner's determination considerable deference and will not substitute "its own judgment for that of the [Commissioner], even if it might justifiably have reached a different result upon a *de novo* review." Valente v. Sec'y of Health & Human Servs., 733 F.2d 1037, 1041 (2d Cir. 1984).

7. The Commissioner has established a five-step sequential evaluation process to determine whether an individual is disabled under the Act. See 20 C.F.R. §§ 404.1520, 416.920. The Supreme Court of the United States recognized the validity of this analysis in Bowen v. Yuckert, and it remains the proper approach for analyzing whether a claimant is disabled. 482 U.S. 137, 140-42, 107 S. Ct. 2287, 2291, 96 L. Ed. 2d 119 (1987).

8. The five-step process is as follows:

> First, the [Commissioner] considers whether the claimant is currently engaged in substantial gainful activity. If he is not, the [Commissioner] next considers whether the claimant has a "severe impairment" which significantly limits his physical or mental ability to do basic work activities. If the claimant suffers such an impairment, the third inquiry is whether, based solely on medical evidence, the claimant has an impairment which is listed in Appendix 1 of the regulations. If the claimant has such an impairment, the [Commissioner] will consider him disabled without considering vocational factors such as age, education, and work experience; the [Commissioner] presumes that a claimant who is afflicted with a "listed"

3

>impairment is unable to perform substantial gainful activity. Assuming the claimant does not have a listed impairment, the fourth inquiry is whether, despite the claimant's severe impairment, he has the residual functional capacity to perform his past work.  Finally, if the claimant is unable to perform his past work, the [Commissioner] then determines whether there is other work which the claimant could perform.

Berry v. Schweiker, 675 F.2d 464, 467 (2d Cir. 1982) (per curiam) (quotations in original); see also 20 C.F.R. § 416.920; Rosa v. Callahan, 168 F.3d 72, 77 (2d Cir. 1999).

9. Although the claimant has the burden of proof on the first four steps, the Commissioner has the burden of proof on the fifth and final step. See Bowen, 482 U.S. at 146 n.5; Ferraris v. Heckler, 728 F.2d 582, 584 (2d Cir. 1984).  The final step is divided into two parts.  First, the Commissioner must assess the claimant's job qualifications by considering his or her physical ability, age, education, and work experience.  Second, the Commissioner must determine whether jobs exist in the national economy that a person having the claimant's qualifications could perform.  See 42 U.S.C. § 423(d)(2)(A); 20 C.F.R. § 416.920(a)(4); Heckler v. Campbell, 461 U.S. 458, 460, 103 S. Ct. 1952, 1954, 76 L. Ed. 2d 66 (1983).

10. The ALJ analyzed Plaintiff's claim for benefits under the process set forth above. At step one, the ALJ found that Plaintiff has not engaged in substantial gainful activity since his alleged disability onset date of November 4, 2015. (R. at 97.)  At step two, the ALJ found that Plaintiff has the severe impairments of: left foot 3rd, 4th, and 5th metatarsals exostoses; degenerative disc disease of the lumbar spine with spondylolisthesis and spondylolysis; degenerative disc disease of the cervical spine with discectomy; insomnia; sleep apnea; emphysema; asthma; chronic obstructive pulmonary disorder; adjustment disorder with depression and anxiety; and alcohol abuse. (Id.) At

4

step three, the ALJ found that Plaintiff does not have an impairment or combination of impairments that meets or medically equals any impairment(s) listed in 20 C.F.R. Part 404, Subpart P, Appendix 1 (20 C.F.R. §§ 416.920(d), 416.925, and 416.926). (R. at 98.)

11. Next, the ALJ found that Plaintiff retains the residual functional capacity ("RFC") to perform light work, except that he

> must be allowed to alternate between standing and sitting every 30 minutes while remaining on task … [and] requires a cane to ambulate. [He] can frequently push or pull and reach overhead with both upper extremities. [He] can occasionally push or pull or operate foot controls with the left lower extremity. [He] can occasionally balance, kneel, crouch, stoop, and crawl, can occasionally climb stairs and ramps, can never climb ladders, ropes and scaffolds, and can never be exposed to vibrations and unprotected heights. [He] can have occasional exposure to dust, noxious odors, fumes, poor ventilation, extreme cold, and wetness. [He] is able to understand and remember simple instructions, make simple work related decisions, carry out simple instructions, and can occasionally deal with changes in a routine work setting.

(R. at 100.)

12. At step four, the ALJ found that Plaintiff has no past relevant work. (R. at 104.) At step five, the ALJ found that there are jobs that exist in significant numbers in the national economy that Plaintiff could perform. (R. at 105.) Accordingly, the ALJ found that Plaintiff was not disabled at any time between the alleged disability onset date of November 4, 2015, and the date of the decision. (R. at 105.)

13. Plaintiff argues that the ALJ's final determination is not supported by substantial evidence because (1) ALJ improperly relied on the stale opinion of Dr. John Schwab; (2) the ALJ impermissibly substituted her lay judgment for medical opinion in formulating Plaintiff's RFC; and (3) the Appeals Council improperly rejected medical records from the period after the ALJ's decision.

14.     Plaintiff first argues that the ALJ improperly relied on Dr. Schwab's stale opinion. On February 26, 2016 Dr. John Schwab performed an internal medicine examination of Plaintiff. (R. at 522-26.) Dr. Schwab noted that Plaintiff's left foot was tender to the touch. He observed that Plaintiff declined to walk without a cane, and wore a boot on his left foot. (R. at 523.) "With the cane, gait was normal with left foot splayed out." (Id.) Dr. Schwab stated that Plaintiff "uses a cane for pain, all the time…. In my opinion it is necessary." (Id.) Without stating whether Plaintiff used his cane for this part of the exam, Dr. Schwab noted that Plaintiff needed no help getting on and off the exam table, and that he was able to rise from his chair without difficulty." (Id.)  Plaintiff's lumbar and cervical spines both showed full flexion and extension, and back pain was not an issue Plaintiff mentioned. (R. at 524.) Dr. Schwab observed that an X-ray of the lumbar spine revealed an old compression fracture and noted "spondylolithesis with spondylolysis." (R. at 525.) Another X-ray showed the prior foot surgery Plaintiff had undergone. (Id.) Dr. Schwab diagnosed Plaintiff with arthralgia of the left foot, history of left testicle removed, COPD, sleep apnea, and tobacco use. (Id.)

15.     After this exam, the record shows Plaintiff being treated multiple times for foot, spine, and urinogenital problems. He reported on September 22, 2016, that he was walking better with orthotic shoe inserts, but underwent a metatarsal head resection in January 2017. (R. at 1025, 582.) Some records showed normal lower extremity EMG and that he walked with a normal gait. (R. at 598, 601—2, 636.) However, Plaintiff continued to seek further treatment for his foot. Podiatrist Dr. Howard Penn recommended further foot surgery in a note dated July 12, 2018. (R. at 114.)

16.     Plaintiff underwent a C5-6 discectomy with fusion in January 2018. (R. at 152, 1003). Prior to this surgery, he had limited range of motion in his cervical spine. (R. at 1051.) He reported at his hearing that he had another back surgery scheduled. (R. at 126.)  He also underwent first a distal urethral stricture procedure in July 2016 (R. at 946), and a urethral reconstruction in October 2016, pursuant to ongoing problems after a failed catheterization prior to his onset date. (R. at 946, 848-49.)

17.     At his hearing, Plaintiff testified that he could walk 2-3 blocks, stand for 15-20 minutes, and sit for 15 minutes at a time, though he also stated that he built models for 30 minutes at a time, seated. (R. at 127, 128,126, 131.)

18.     In assessing this record, the ALJ found Dr. Schwab's clinical findings "convincing and persuasive." (R. at 103.) He gave little weight to Dr. Schwab's opinion that Plaintiff required a cane to ambulate[3], finding it contradicted by evidence that Plaintiff could walk 2-3 blocks, and by Dr. Schwab's own findings that Plaintiff could rise to standing without help and walk on his heels and toes without difficulty. (Id.)  Ultimately, the ALJ formulated an RFC allowing for a sit/stand option every 30 minutes and stated that Plaintiff needed a cane to ambulate. (R. at 100.)

19.     Plaintiff first argues that the ALJ improperly relied on Dr. Schwab's "stale" opinion. Plaintiff argues that Dr. Schwab's opinion was stale because it dates from 2016, after which Plaintiff developed further spine and foot problems and underwent surgery on his foot and spine. Defendant argues that the ALJ properly incorporated the records of

---

[3] The ALJ appears to misattribute this opinion to Dr. Schwab. Dr. Schwab opined that the cane was "necessary," but did not specify whether Plaintiff needed it only to walk or for standing as well. (See R. at 103, 524.)

Plaintiff's subsequent medical issues into his RFC determination. Defendant's argument is unavailing.

20. A medical opinion is stale when it is "rendered before some significant development in the claimant's medical history." Clark v. Comm'r of Soc. Sec., No. 18-CV-0509-MJR, 2019 WL 3886723, at *3 (W.D.N.Y. Aug. 19, 2019).  For a medical opinion to be stale, not only must there be a significant period of time between the date of the opinion and the hearing date, there also must be subsequent treatment notes "indicat[ing] a claimant's condition has deteriorated" over that period. Vazquez v. Saul, No. 18-CV-242, 2019 WL 3859031, at *3 (W.D.N.Y. Aug. 16, 2019) (citing Whitehurst v. Berryhill, No. 1:16-CV-01005-MAT, 2018 WL 3868721, at *4, *5 (W.D.N.Y. Aug. 14, 2018)). Medical opinions that are "stale and based on an incomplete medical record may not be substantial evidence to support an ALJ finding." Camille v. Colvin, 104 F. Supp. 3d 329, 343-44 (W.D.N.Y. 2015), aff'd 652 F. App'x 25 (2d Cir. 2016).

21. Here, Dr. Schwab's opinion is stale because it does not address the back and foot problems that resulted in subsequent surgeries.  The surgical interventions alone demonstrate a "deterioration" of Plaintiff's condition, such that Dr. Schwab's opinion of a "mild to moderate" limitation in walking and climbing may no longer be accurate. Dr. Schwab's opinion therefore cannot qualify as substantial evidence on which to base an RFC, and remand is therefore warranted.

22. Plaintiff next argues that the ALJ impermissibly formulated a highly specific RFC in the absence of a non-stale opinion regarding his functional capabilities. Defendant argues that the ALJ was permitted to formulate an RFC based on the entire record.

23. An ALJ may not "ma[ke] an RFC determination in the absence of supporting expert medical opinion[.]" Henningsen v. Comm'r of Soc. Sec. Admin., 111 F.Supp.3d 250, 271 (E.D.N.Y. 2015) (quotation omitted.) In the case of simple conditions, an ALJ may "make a common sense judgment' concerning [Plaintiff's] limitations, and no medical opinion evidence [is] necessary." Biro v. Comm'r of Soc. Sec., 335 F. Supp. 3d 464, 471–72 (W.D.N.Y. 2018) (citing Lilley v. Berryhill, 307 F.Supp.3d 157, 161 (W.D.N.Y. 2018)). But in general, "an ALJ's determination of RFC without a medical advisor's assessment is not supported by substantial evidence." Williams v. Berryhill, No. 18-CV-283, 2017 WL 1370995, at *3 (W.D.N.Y. Apr. 17, 2017) (quotation omitted); see also Dennis v. Colvin, 195 F. Supp. 3d 469, 474 (W.D.N.Y. 2016). Remand is appropriate where the record lacks a "useful assessment" of the claimant limitations. Agostino v. Comm'r of Soc. Sec., No. 18-CV-1391-FPG, 2020 WL 95421, at *3–4 (W.D.N.Y. Jan. 8, 2020) (citing Freeman v. Comm'r of Soc. Sec., No. 18-CV-6008, 2019 WL 2016585, at *5 (W.D.N.Y. May 8, 2019)).

24. Here, there is no medical opinion that addresses Plaintiff's spine and foot issues, apart from that of Dr. Schwab. Plaintiff's spine issues were sufficiently severe that they necessitated a discectomy with fusion. (R. at 1003.) And although Plaintiff reported in 2016 that orthotic inserts helped his feet—evidence the ALJ used to support his RFC—he also underwent foot surgery after that. (R. at 1025, 582.) Under these circumstances, it was necessary for the ALJ to rely upon a medical source's opinion in considering the limitations, if any, associated with these impairments. Biro, 335 F. Supp. 3d at 471-72 (citing Perkins v. Berryhill, No. 17-CV-6327-FPG, 2018 WL 3372964, at *4 (W.D.N.Y. July 11, 2018) (ALJ cannot render a common-sense judgment about a claimant's

functional capacity where the record "contain[s] complex medical findings and do[es] not suggest only minor impairment)). Remand is therefore warranted on this basis.

25.   Plaintiff also argues that the Appeals Council improperly failed to consider evidence of lumbar-fusion surgery that occurred after the ALJ's opinion. Because remand is warranted on other grounds, this Court will not consider this argument here. This issue may be considered by the ALJ upon remand.

IT HEREBY IS ORDERED, that Plaintiff's Motion for Judgment on the Pleadings (Docket No.10) is GRANTED.

FURTHER, that Defendant's Motion for Judgment on the Pleadings (Docket No.12) is DENIED.

FURTHER, that this case is REMANDED to the Commissioner of Social Security for further proceedings consistent with this opinion.

FURTHER, that the Clerk of Court is directed to CLOSE this case.

SO ORDERED.


Dated:    May 4, 2020
          Buffalo, New York

                                                s/William M. Skretny
                                              WILLIAM M. SKRETNY
                                              United States District Judge